## *In re* FRANTZEN, Bankrupt.

### (*Circuit Court, N. D. Illinois.* May 3, 1884.)

#### BANKRUPTCY—FRAUDULENT PREFERENCE—RETURN OF TRUST FUNDS.

The motives of a bankrupt, as well as all the peculiar circumstances connected with the transaction, must be taken into consideration in order to determine whether he thereby gave a fraudulent preference to one creditor over others; and if he believed, and such was the fact, that money received by him from such creditor was in the nature of trust funds, so that it would not create the ordinary relation of debtor and creditor between the parties, but a claim upon which there was a peculiar and special obligation on his part in the nature of a trust to settle, a settlement thereof cannot be considered a fraudulent preference within the meaning of the bankrupt law.

Petition on Review from the District Court.

*Miller, Lewis & Bergen,* for petitioners.

DRUMMOND, J. On the application of the bankrupt for a discharge, objections were made by one of his creditors who had proved his debt, and thereupon the case was referred to the register in bankruptcy, with a stipulation that his finding should be entered up by the district court as its order in the case. On an examination by the register, he found that the objections were not sustained; and an order to that effect being made by the district court, and that the bankrupt was entitled to his discharge, the creditor filed a petition for review in this court.

There were various objections made in the district court, but they had been reduced simply to this: that he gave a fraudulent preference, contrary to the provisions of the bankrupt act, to one Julius Ahlefeldt, for the purpose of preventing his property from coming to the hands of his assignee, and being distributed according to law for the payment of his debts. This is the only allegation which this court can consider.

There is no doubt that the bankrupt, for some time before he filed his petition in bankruptcy, was in fact insolvent, but, having made a sale of some property sometime previous to the filing of his petition, the evidence shows that, in all probability, if the vendee had complied with the contract which he made with the bankrupt, the latter might not have been insolvent; in fact, the contract was never complied with. The circumstances connected with the alleged fraudulent preference seem to be, in substance, as follows:

Some considerable time before the bankrupt failed, Julius Ahlefeldt gave him a draft for collection, amounting to $66.18. It seems that the bankrupt, and a partner with whom he was doing business sometime before, had been in the habit of receiving money as bankers, and that they issued pass-books to their depositors, among whom, at the time, Ahlefeldt was one. This business had all been closed up long before the failure; but, at the time this draft was given to the bankrupt, the amount was entered in an old pass-book which Ahlefeldt had. Some of the money was paid to Ahlefeldt at the time, and some afterwards. A day or two before the filing of this petition in bankruptcy, and after his failure, he gave Ahlefelt orders on two of his debtors

for the balance of what was due to him on this draft that had thus been left for collection. He says that he had indulged a hope all along, up to a time immmediately preceding the filing of his petition in bankruptcy, that the party to whom he had sold the property already mentioned would be able to meet the obligations of his contract; and when he ascertained that this could not be done, he at once filed a petition in bankruptcy. But it must be assumed, I think, that, at the time he gave these orders to Ahlefeldt, he knew, or had every reason to believe, that he was insolvent. He had told Ahlefeldt that he had failed.

The question is whether this was a fraudulent preference within the meaning of the bankrupt law. The claims proven up against the estate were over $8,000. I think it must be assumed that, in order to so constitute it, there must have been an intention on the part of the bankrupt to give Ahlefeldt an illegal preference, or an unfair advantage over his other creditors. In other words, there must have been a wrongful intent on the part of the bankrupt. If, for example, he believed, and such was the fact, that this was money received by him in the nature of trust funds, so that it would not create the ordinary relation of debtor and creditor between them, but a claim upon which there was a peculiar and special obligation on his part, in the nature of a trust, to return the money which had thus been received on this draft, then it would not be, I apprehend, within the meaning of the bankrupt law, a fraudulent preference. The motives of the bankrupt, as well as all the peculiar circumstances connected with the transaction, must be taken into consideration in order to determine whether he was giving a fraudulent preference. Now, the bankrupt states expressly that he regarded this in the nature of a trust fund. While it may be admitted that a banker on receiving deposits becomes a debtor, in the ordinary sense of the word, of the depositor, still, this was a special and isolated case, where he was intrusted by Ahlefeldt with a draft, and thus became, in one sense, his agent for the collection of this money, and when he collected it, he seems to have so regarded himself, and to have believed that it was his duty, at all events, acting for Ahlefeldt, to return the money to him which he had collected on this draft, and therefore it was he felt it incumbent on him to give him these orders on persons who were his debtors. The money was paid on these orders, and so Ahlefeldt received what the bankrupt had collected for him.

The only portion of the evidence which seems to militate against this view of the facts is what is stated by Ahlefeldt, who, after saying he could not give the words Frantzen used, distinctly, because it was near five years since the statement was made, adds: "He said to me that I had better keep quiet about this business, because that might lead him and myself into trouble, and he wanted to do the best for me he could." Now, clearly, if the bankrupt meant at that time, by doing what he did, he was giving to Ahlefeldt an unjust and illegal advantage over his other creditors, then it might be said it would show a fraudulent intent; but this, I think, may be construed differently, ad-

mitting that the witness is not mistaken in the words used by the bankrupt. He may have thought and believed that it·was all right and just, and something which he ought to do, and which was not giving an unfair advantage to Ahlefeldt; yet that it might be misconstrued by other creditors of his who might possibly hear of it, and therefore, on that account, he wanted nothing said about it. It must necessarily appear, I think, under the circumstances of this case, that the language used is susceptible only of the construction that he intended to do something that he believed to be wrong, and contrary to the principles of justice and equity. It may be admitted that the case is not free from difficulty, and while it is insisted that the amount involved ought not to make any difference, still it is impossible for the court to disregard the fact that the only creditor who files the petition reviewed in this case is one whose claim amounts to $57.70, and that the only amount which was paid to Ahlefeldt, immediately preceding the filing of the petition in bankruptcy and after he had failed, was $34.20.

On the whole, I feel inclined, I admit with some hesitation, to affirm the ruling of the district court.